IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION

| | | |
|---|---|---|
| PUBLIC CITIZEN AND SIERRA CLUB, | § § § | |
| Plaintiffs, | § § | |
| v. | § § | 5:05-CV-39-DF |
| AMERICAN ELECTRIC POWER CO. and SOUTHWESTERN ELECTRIC POWER CO., | § § § § § | |
| Defendants. | § § | |

**O R D E R**

Before the Court is the Motion to Dismiss Plaintiffs' Third and Fifth Claims for Relief brought by defendants American Electric Power Company ("AEP") and Southwestern Electric Power Company ("SWEPCO") (collectively, the "Defendants"). Dkt. No. 77. Also before the Court are Plaintiffs' response and Defendants' reply. Dkt. Nos. 82 & 86. The Court held a hearing on December 7, 2006. Having considered the pleadings and all relevant papers, the Court finds that Defendants' motion should be **DENIED**.

**I. BACKGROUND**

Defendants move to dismiss for lack of subject matter jurisdiction and for failure to state a claim. Dkt. No. 77.

The purpose of the Clean Air Act ("CAA") is, among others, "to protect and enhance the quality of the Nation's air resources so as to promote the public health and welfare and the productive capacity of its population." 42 U.S.C. § 7401(b)(1). Pursuant to the CAA, the United

States Environmental Protection Agency ("EPA") has established National Ambient Air Quality Standards ("NAAQS") for "criteria pollutants," such as sulfur dioxide ("SO2") and carbon monoxide ("CO").  42 U.S.C. § 747440 CFR §§ 50.4, 50.5 & 50.8.  Each state must adopt "a plan which provides for implementation, maintenance, and enforcement" of NAAQS, commonly known as a State Implementation Plan ("SIP").  *Id.* at § 7410(a)(1); Second Amended Complaint, Dkt. No. 61 at ¶ 16.  In areas that are either in "attainment" (meet the NAAQS) or are "unclassifiable" (insufficient data to determine attainment), the CAA imposes requirements for the prevention of significant deterioration ("PSD") of air quality.  42 U.S.C. § 7471.  Each state's SIP must contain a PSD program.  42 U.S.C. § 7471.  The Texas SIP is set out at 40 C.F.R. § 52.2270(c).  Dkt. No. 61 at ¶ 19.  The Texas Commission on Environmental Quality ("TCEQ") is the environmental agency for the state of Texas.

   Plaintiffs filed suit pursuant to 42 U.S.C. § 7604, which is the "citizen suit" provision of the CAA.  Dkt. No. 61 at ¶ 3.  Plaintiffs bring five claims alleging violations of the CAA at the Welsh Power Plant in Titus County, Texas (the "Welsh Plant").  *See* Dkt. No. 61 at ¶¶ 27-66.  Plaintiff alleges that SWEPCO, a subsidiary of AEP, owns and operates the Welsh Plant.  *Id.* at ¶ 24.  Plaintiffs allege the Welsh Plant comprises three coal-fired electric generating units ("Unit 1", "Unit 2", and "Unit 3," respectively), which became operational in 1977, 1980, and 1982, respectively.  *Id.*

   Plaintiffs' Third Claim alleges carbon monoxide ("CO") violations at Unit 2.  *Id.* at ¶¶ 45-48.  Further, Plaintiffs allege that on December 21, 2004, Defendants received "coverage under a state standard permit for pollution control projects pursuant to 30 [Tex. Admin. Code] § 116.617 [(2006)]" (hereinafter, "standard pollution control permit") to perform "burner and air-

delivery system changes to [Unit 2] that reduce emissions of nitrogen oxides, but they do this at the expense of greatly increased CO emissions." *Id.* at ¶ 46. Plaintiffs allege the standard pollution control permit allowed "a 19.5-fold increase in allowable hourly emissions" of CO. *Id.* Plaintiffs allege that the emission of CO at Unit 2 violates "Defendants' PSD permit, Title V Federal Operating Permit, 42 U.S.C. § 7661a(a), and Texas regulations governing the federal operating permit program, 30 [Tex. Admin. Code] § 122.143(4), " as well as "the applicable provisions of the Texas SIP . . . ." *Id.* at ¶ 47. Plaintiffs also allege failure to report excessive CO emissions in violation of Defendants Title V Federal Operating Permit. *Id.* Plaintiffs seek civil penalties pursuant to 42 U.S.C. § 7604(a), 40 C.F.R. § 19.4, and 42 U.S.C. § 7413(b). *Id.* at ¶ 48.

Plaintiffs' Fifth Claim alleges violations of a permit condition limiting allowable sulfur content in the fuel used in boilers at the Welsh Plant. *Id.* at ¶¶ 64-66. Plaintiffs allege that Defendants' PSD permit limited fuel sulfur content to 0.5% by weight and that Defendants exceeded that limit "on numerous occasions between June 2001 and May 2004." *Id.* at ¶ 64 (citing Exhs. O & P). Plaintiffs allege violation on 244 days identified in Exhibit O. *Id.* at ¶ 65. Plaintiffs seek civil penalties pursuant to 42 U.S.C. § 7604(a), 40 C.F.R. § 19.4, and 42 U.S.C. § 7413(b). *Id.* at ¶ 66.

## II.  LEGAL PRINCIPLES

In ruling on a motion to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(1), a court may not grant dismissal "unless it appears certain that the plaintiffs cannot prove any set of facts in support of their claim which would entitle them to relief," and a court "must take as true all of the allegations of the complaint and

the facts as set out by the [plaintiffs]." *Saraw Partnership v. U.S.*, 67 F.3d 567, 569 (5th Cir. 1995). The party invoking federal jurisdiction bears the burden of showing standing to sue. *Steel Co. v. Citizens for a Better Gov't*, 523 U.S. 83, 102-03 (1998) (finding "there must be alleged (and ultimately proved)," an injury in fact, causation, and redressability).

When deciding a motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim, the complaint must be liberally construed in favor of the plaintiff, and all facts pleaded in the complaint must be taken as true. *Campbell v. Wells Fargo Bank*, 781 F.2d 440, 442 (5th Cir. 1986). The district court may not dismiss a complaint for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). "[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Southern Christian Leadership Conference v. Supreme Ct.*, 252 F.3d 781, 786 (5th Cir. 2001) (quoting *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993)). "[A] complaint . . . must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Banks v. Nat'l Collegiate Athletic Ass'n*, 977 F.2d 1081, 1093 (7th Cir. 1992) (citation omitted). "If a complaint is merely ambiguous or does not contain sufficient information to allow a responsive pleading to be framed, then the proper remedy is a motion for a more definite statement under Federal Rule of Civil Procedure 12(e)." *Sisk v. Tex. Parks and Wildlife Dept.*, 644 F.2d 1056, 1058 (5th Cir. 1981).

In considering a motion to dismiss, a district court must limit itself to the contents of the pleadings, including attachments thereto. *See* Fed. R. Civ. P. 12(b)(6) (2000). Documents

...

incorporated by reference in the complaint may also be considered.  *Willard v. Humana Health Plan of Tex.*, 336 F.3d 375, 379 (5th Cir. 1993).  Various circuits have also specifically allowed "[d]ocuments that a defendant attaches to a motion to dismiss [to be] considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993); *see also Branch v. Tunnell*, 14 F.3d 449, 453-54 (9th Cir. 1994); *Field v. Trump*, 850 F.2d 938, 949 (2d Cir. 1988); *Sheppard v. Tex. Dep't of Transp.*, 158 F.R.D. 592, 595 (E.D. Tex. 1994).  The Fifth Circuit approves, holding that "[i]n so attaching, the defendant merely assists the plaintiff in establishing the basis of the suit, and the court in making the elementary determination of whether a claim has been stated." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000); *but see Scanlan v. Tex. A&M Univ.*, 343 F.3d 533 (5th Cir. 2003) (finding exception where documents disputed).

### III.  DISCUSSION

Failure to provide adequate pre-suit notice generally bars a private suit against an alleged violator.  *Hallstrom v. Tillamook County*, 493 U.S. 20, 31 (1990).

Title 42 U.S.C. § 7604(a) provides for the so-called "citizen suit":

> Except as provided in subsection (b) of this section, any person may commence a civil action on his own behalf--
> (1) against any person . . . who is alleged to have violated (if there is evidence that the alleged violation has been repeated) or to be in violation of (A) an emission standard or limitation under this chapter or (B) an order issued by the Administrator or a State with respect to such a standard or limitation, . . .
> (3) against any person who proposes to construct or constructs any new or modified major emitting facility without a permit required under part C of subchapter I of this chapter (relating to significant deterioration of air quality) or part D of subchapter I of this chapter (relating to

> nonattainment) or who is alleged to have violated (if there is evidence that the alleged violation has been repeated) or to be in violation of any condition of such permit.

Title 42 U.S.C. § 7604(b) requires pre-suit notice:

> No action may be commenced--
> (1) under subsection (a)(1) of this section--
> (A) prior to 60 days after the plaintiff has given notice of the violation (i) to the Administrator, (ii) to the State in which the violation occurs, and (iii) to any alleged violator of the standard, limitation, or order . . . .

By its own terms, the pre-suit notice requirement of 42 U.S.C. § 7604(b) does not apply to citizen suits brought pursuant to 42 U.S.C. § 7604(a)(3). *U.S. v. Am. Elec. Power Serv. Corp.*, 137 F. Supp. 2d 1060, 1064-65 (S.D. Ohio 2001)).

**A. Plaintiffs' Third Claim – Pre-Suit Notice**

Defendants argue that Plaintiffs' notice letters provided only "cursory descriptions of the CO allegations contained in Plaintiffs' Third Claim [that] did not satisfy the CAA's content requirements for notice letters and w[ere] therefore insufficient." Dkt. No. 77 at 13. Defendants argue that the Second Notice Letter fails to "provide any explanation of when or how these supposed exceedances took place" because it only refers to "numerous occasions since March of 2000." *Id.* at 16 & 17. Defendants assert that the First Notice Letter is "even less detailed." *Id.* Because these requirements are "jurisdictional and mandatory," Defendants argue Plaintiffs' Third Claim should be dismissed. *Id.* at 13 (citing *Friends of the Earth, Inc. v. Chevron Chem. Co.*, 900 F.Supp. 67, 76 (E.D. Tex. 1995)).

Plaintiffs respond that "a notice letter need not identify every detail of an alleged violation; it must only provide sufficient information so that the recipient can identify those details." Dkt. No. 82 at 5 (discussing 40 C.F.R. § 54.3(b)). Plaintiffs argue that providing a

range of time during which repeated violations occurred is sufficient because the Defendants can identify the specific dates. *Id.* at 6-8 (citing *Sierra Club v. Tri-State Generation and Transmission Ass'n., Inc.*, 173 F.R.D. 275, 283 (D. Colo. 1997), *P.I.R.G. of N.J. v. Hercules, Inc.*, 50 F.3d 1239, 1247 (3d Cir. 1995), *Fried v. Sungard Recovery Servs., Inc.*, 900 F.Supp. 758, 765 (E.D. Penn. 1995), *Hudson Riverkeeper Fund, Inc. v. Putnam Hosp. Ctr., Inc.*, 891 F.Supp. 152, 154 (S.D.N.Y. 1995), *Defenders of Wildlife v. Ballard*, 73 F. Supp. 2d 1094, 1097 (D. Ariz. 1999), *Friends of the Earth v. Chevron Chem.*, 900 F.Supp. 67 (E.D. Tex. 1995), *Chesapeake Bay Found. v. Bethlehem Steel Corp.*, 652 F.Supp. 620, 628 (D. Md. 1987) & *Susquehanna Valley Alliance v. Three Mile Island*, 619 F.2d 231, 243 (3d Cir. 1980)).

As to the activity alleged to be in violation, Plaintiffs argue that the pre-suit notice was sufficiently specific because it "allege[d] that Defendants operated the Welsh Plant in such a manner as to generate excessive emissions of CO from the Unit No. 2 exhaust stack." *Id.* at 9. Plaintiffs argue that Defendants are aware of the power-generating activities leading to the emissions. *Id.* Plaintiffs argue that they need not present "data upon which the allegation is based." *Id.* (quoting Dkt. No. 77 at 16).

Defendants reply that Plaintiffs' notice "merely identifie[d] the full statute of limitations period," and Defendants argue that the notice provision of 42 U.S.C. § 7604 must be strictly construed. Dkt. No. 86 at 7 (citing *Hallstrom*, 493 U.S. at 31).

The Court may not "disregard" the pre-suit notice requirement. *Hallstrom*, 493 U.S. at 31 (finding that although plaintiff provided adequate pre-suit notice to defendant, plaintiff's failure to give pre-suit notice to Oregon's Department of Environmental Quality and the EPA was dispositive). However, a pre-suit notice identifying particular activities and a range of several

years is sufficient. *Tri-State Generation*, 173 F.R.D. at 283 (finding sufficient "plaintiff's allegation that the violations had occurred 'for at least the past five years' and continued to occur" and rejecting "defendants' argument that plaintiff failed to sufficiently specify the dates on which the alleged violations occurred"); *Hercules*, 50 F.3d at 1247 (reversing district court finding that pre-suit notice under Clean Water Act must specify every day of violation); *Fried*, 900 F.Supp. at 765 (finding sufficient a pre-suit notice under CAA specifying that "violations occurred repeatedly between 1990 and 1994"); *Hudson Riverkeeper Fund*, 891 F.Supp. at 154 (finding that under Clean Water Act, a pre-suit notice must provide "at a bare minimum some reasonably specific indication of the time-frame when the alleged violations occurred"); *Ballard*, 73 F. Supp. 2d at 1097 (finding that "Plaintiffs' notice does not have to identify each and every site violation"); *Susquehanna Valley Alliance*, 619 F.2d at 243 (finding that dismissal for lack of pre-suit notice "would serve no purpose" where complaint suggested that defendants had actual notice).

The Court turns to the pre-suit notice dated July 13, 2004. This document is attached to Defendants' motion to dismiss. Dkt. No. 77 at Exh. 1. The Court will consider this document because it is "referred to in [Plaintiffs'] complaint and [is] central to [their] claim[s]." *Venture Assocs.*, 987 F.2d at 431; Dkt. No. 61 at ¶ 5. The pre-suit notice refers to carbon monoxide violations "on all three units" at the Welsh Plant occurring "since at least 2000." Dkt. No. 77, Exh. A at 2-3. In light of the authority considered above, the Court finds Plaintiffs' notice sufficient to satisfy 42 U.S.C. § 7604 as to their Third Claim.

**B. Plaintiffs' Third Claim – Standing**

Defendants argue that Plaintiffs' Third Claim is moot and that Plaintiffs lack standing to

assert their Third Claim because it alleges "past violations of CO permit limits that no longer exist . . . ." Dkt. No. 77 at 10. Defendants argue they "have not ever violated their current permitted CO limits and there is no allegation that Defendants will begin to violate them in the future." *Id.* at 11. Defendants argue that the Court cannot order compliance with permit limits no longer in force and that, therefore, Plaintiffs' Third Claim is not redressable. *Id.* Defendants further argue that any past CO violations are incapable of repetition because "the CO permit limits alleged to have been violated no longer have any legal effect." *Id.*

Plaintiffs respond that 42 U.S.C. § 7604(a)(3) allows a citizen suit for past PSD permit violations "if there is evidence that the alleged violation has been repeated." Dkt. No. 82 at 1. Plaintiffs argue that the Texas permit rule on which Defendants rely, namely 30 Tex. Admin. Code § 116.617, has not been, and can not be, approved by the EPA. *Id.* at 2 & 3. Plaintiffs thus argue that while the Texas permit rule may give Defendants a defense to a state enforcement action, that rule is not a defense to a federal citizen suit. *Id.* at 2-3. Alternatively, Plaintiffs respond that they have standing to sue for past violations because payment of penalties to the US Treasury provides redress for their grievances. *Id.* at 4 (citing *Friends of the Earth v. Laidlaw*, 528 U.S. 167, 187 (2000)).

Defendants reply that Plaintiffs improperly make a new allegation that the Welsh Plant's consolidated permit is invalid. Dkt. No. 86 at 1. Defendants argue that Plaintiffs' "sole recourse was to raise such objections during the TCEQ notice and comment period that took place prior to the permit's renewal." *Id.* at 2. Also, Defendants argue that Plaintiffs cannot challenge the Texas standard permit because "[f]ederal citizen suits may not be used to collaterally attack the validity of a CAA permit action by State regulators." *Id.* at 3. Defendants propose that Plaintiffs

could have objected to the standard permit rule or the approval of the standard permit at Welsh Unit 2 by filing a petition in state court. *Id.* at 3-4. Defendants argue that civil penalties will not provide redress under *Laidlaw* because Plaintiffs have not shown they "face[] the threat of future injury due to illegal conduct ongoing at the time of suit." *Id.* at 5 (citing *Laidlaw*, 528 U.S. at 185 & *Sierra Club v. Browner*, 130 F. Supp. 2d 78, 83 (D.D.C. 2001)).

"[C]itizen suitors lack standing to seek civil penalties for violations that have abated by the time of suit." *Laidlaw*, 528 U.S. at 187. However, the Supreme Court held in *Laidlaw* that citizens had standing under the Clean Water Act to seek civil penalties in certain circumstances:

> Here, the civil penalties sought by [plaintiffs] carried with them a deterrent effect that made it likely, as opposed to merely speculative, that the penalties would redress [plaintiffs'] injuries by abating current violations and preventing future ones . . . .

*Id.* The Court finds this Supreme Court holding on standing as it relates to the Clean Water Act probative of standing under the CAA because Plaintiffs seek the same sort of "deterrent effect" as the plaintiffs in *Laidlaw*. *Id.* "To the extent that [civil penalties] encourage defendants to discontinue current violations and deter them from committing future ones, they afford redress to citizen plaintiffs who are injured or threatened with injury as a consequence of ongoing unlawful conduct." *Id.* at 186.

Whether Plaintiffs in this case allege sufficient facts to show ongoing or potential future violations turns on whether the CO limit was a federal PSD permit requirement. If so, the requirement could not have been changed by the standard pollution control permit without federal approval. *See* 42 U.S.C. § 7416. Defendants argue that the CO limit for which Plaintiffs allege violations in their Third Claim were added by the State of Texas and are therefore part of

state permits. *Id.* at 20.

Plaintiffs respond that the CO exceedances alleged in the Third Claim are PSD permit violations. Dkt. No. 82 at 4. Plaintiffs argue that CO is a "criteria pollutant" subject to PSD permitting, that Defendants represented certain CO emission levels in PSD permit application materials in 1978, and that Defendants' 1998 permit set out CO emission limits for Welsh Plant Unit 2. *Id.* Plaintiffs also argue that the standard pollution control permit, 30 Tex. Admin. Code § 116.617, has not been approved by the EPA as part of the Texas SIP. *See* 40 C.F.R. § 52.2270(c).

Defendants reply that "the PSD rules in effect at the time of the February 1978 permit application did not require CO be evaluated as part of PSD review," and Defendants argue that the 1978 revisions did not apply to Welsh Plant Unit 2. Dkt. No. 86 at 6 (citing 40 C.F.R. § 52.21(c)(2)(i) & (d)(2)(ii) (July 1, 1977)).

If the CO limit on Unit 2 is a PSD limit, then Plaintiffs allege sufficient facts to show ongoing or potential future CAA violations. Because all doubts must be resolved in favor of the plaintiff at the pleading stage, the Court finds for purposes of this motion that the CO limit on Unit 2 may be a PSD limit. *Campbell,* 781 F.2d at 442; *see* Dkt. No. 61, Exh. A at 4. If so, the state could not raise that limit without federal approval, and Defendant has not shown such approval. *See* Dkt. Nos. 77 & 86; *see* 40 C.F.R. 52.2270(c); *see also New York v. Envtl. Prot. Agency*, 413 F.3d 3 (D.C. Cir. 2005) (finding EPA lacked authority to exempt pollution control projects that increased "collateral" pollutants). Plaintiffs' Third Claim is therefore not moot because Plaintiffs have made sufficient allegations of ongoing and potential future violations to show standing under *Laidlaw*. 528 U.S. at 187. Defendants' motion to dismiss Plaintiffs' Third

Claim should therefore be **DENIED**.

**C.  Plaintiffs' Fifth Claim**

Defendants argue that neither of Plaintiffs' notice letters provided adequate pre-suit notice of the Fifth Claim.  Dkt. No. 77 at 13 & 15; *see* § III. A., *supra*.

Plaintiffs respond that the Fifth Claim alleges violation of a PSD permit condition, which is a citizen suit pursuant to 42 U.S.C. § 7604(a)(3) and accordingly not subject to the pre-suit notice requirements in subsection (b) of that section.  Dkt. No. 82 at 10.  Plaintiffs argue that the absence of a pre-suit notice requirement in these circumstances is neither a drafting error nor a violation of separation of powers.  *Id.* at 11 (citing *Am. Elec. Power Serv.*, 137 F. Supp. 2d at 1064-65).

Plaintiffs' second pre-suit notice letter is dated June 2, 2005.  Dkt. No. 77 at Exh. B.  Plaintiffs filed their Second Amended Complaint on July 26, 2006, adding the current Fifth Claim relating to fuel sulfur content.  Dkt. No. 61.

The second pre-suit notice letter provides notice of "PSD Permit program violations" related to "major modifications . . . at each of the three boiler units at the Welsh Plant."  *See* Dkt. No. 77, Exh. B at 8.  The letter continued by explaining that "[t]hese modifications resulted in significant net emissions increases, as defined by the relevant PSD regulations, of one or more of the following: SO2, CO, and PM."  *Id.* at 9.  The Court is also mindful that Defendants, the EPA, and TCEQ had actual notice of alleged emission violations at the Welsh plant by way of the first pre-suit notice, as well as the original complaint and the amended complaint.  *See Chesapeake Bay Foundation*, 652 F.Supp. at 628 (finding that where plaintiffs amended complaint to add new claims, "dismissal of claims is not necessary where statutory notice is not given, as long as

the defendant and the regulatory agencies involved had actual notice for more than sixty days"). However, the Court need not decide whether Plaintiffs have satisfied pre-suit requirements as to their Fifth Claim if the fuel sulfur limit may be a PSD requirement.  *See* 42 U.S.C. § 7604.

Defendants argue that the Fifth Claim fails to state a claim because the fuel sulfur permit limit is a Texas permit condition rather than a PSD permit condition.  Dkt. No. 77 at 22.  As such, Defendants argue, Plaintiffs have no federal claim under 42 U.S.C. § 7604.

Plaintiffs respond that the fuel sulfur limit is a "criteria pollutant" subject to control by a PSD permit.  Dkt. No. 82 at 11-12.  Plaintiffs note that Defendants have a consolidated permit, labeled "PSD-TX-3," which does not distinguish any of its terms as PSD or non-PSD.  *Id.* at 12-13 (citing Dkt. No. 61 at Exh. A).  First, Plaintiffs argue that the original state permits did not contain a fuel sulfur limit.  *Id.* at 13.  Second, Plaintiffs argue that Defendants' representations in its 1976 PSD permit application that it would use low-sulfur coal in its units is federally enforceable pursuant to 40 CFR § 52.21(r)(1).  *Id.* at 13-14.  Third, Plaintiffs argue that regulators may add terms to PSD permits after such permits are issued.  *Id.* at 14.

Defendants reply that the consolidated permit's label "merely shows that at least one of the permits consolidated into the one permit was a PSD permit."  Dkt. No. 86 at 8.  Defendants argue that in issuing the permit, the State had no reason to differentiate the source of the requirements.  *Id.* at 8-9.  Further, Defendants argue that suits to enforce representations made in a PSD permit application are not exempt from the CAA's pre-suit notice requirements because the exception to the general rule requiring notice should be narrowly construed.  *Id.* at 9-10.  The narrow exception is inapplicable, Defendants argue, because the original PSD permits do not incorporate representations in the application materials as applicable conditions.  *Id.* at 10.

-13-

Plaintiff's Second Amended Complaint includes the Welsh Plant's consolidated permit. Dkt. No. 61 at Exh. 1.  This permit, entitled "4381 and PSD-TX-3" provides in Special Condition 6:

> Fuels used in the Unit 1, 2, and 3 Boilers shall be limited to the following:
> A.   Sub-bituminous coal containing no more than 0/5 percent total sulfur by weight.
> B.   No. 2 fuel oil containing no more than 0.5 percent total sulfur by weight.
> The use of other fuel will require a modification to this permit.

*Id.*  Plaintiff also attaches a TCEQ document indicating that representations about fuel sulfur content were made in "permit renewal applications and follow up requests for information" relating to the consolidated permit.  *Id.* at Exh. O.  Because all doubts must be resolved in favor of the plaintiff at the pleading stage, the Court finds for purposes of this motion that the state may chose to add limitations upon renewal of a PSD permit and that the fuel sulfur limit in the Welsh Plant's permit may be a PSD limit.  *Campbell,* 781 F.2d at 442; Dkt. No. 61, Exh. A at 5; 40 C.F.R. § 52.21(r).  A violation of a PSD limit may be enforced by a citizen suit pursuant to 42 U.S.C. § 7604(a)(3).  Pre-suit notice is not required to bring such a suit.  *Am. Elec. Power Serv.*, 137 F. Supp. 2d at 1064-65.  Defendants' motion to dismiss Plaintiff's Fifth Claim should therefore be **DENIED**.

### V.  CONCLUSION

For all of the foregoing reasons, Defendants' Motion to Dismiss Plaintiffs' Third and Fifth Claims for Relief (Dkt. No. 77) is hereby **DENIED**.

**SIGNED this 27th day of December, 2006.**

_____
-1   DAVID FOLSOM
     UNITED STATES DISTRICT JUDGE