IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION

| | | |
|---|---|---|
| PUBLIC CITIZEN AND SIERRA CLUB, | § § § | |
| Plaintiffs, | § § | |
| v. | § § | 5:05-CV-39-DF |
| AMERICAN ELECTRIC POWER CO. and SOUTHWESTERN ELECTRIC POWER CO., | § § § § § | |
| Defendants. | § | |

## O R D E R

Before the Court is Plaintiffs' Motion for Partial Summary Judgment. Dkt. No. 46. Also before the Court are Defendants' response, Plaintiffs' reply, and Defendants' sur-reply. Dkt. Nos. 52, 55 & 58. The Court held a hearing on December 7, 2006. Having considered the pleadings and all relevant papers, the Court finds that Plaintiffs' motion should be **DENIED**.

## I. BACKGROUND

This is a Clean Air Act ("CAA") case. Plaintiffs filed suit pursuant to 42 U.S.C. § 7604, which is the "citizen suit" provision of the CAA. Second Amended Compl., Dkt. No. 61 at ¶ 3. Plaintiffs bring five claims alleging violations of the CAA at the Welsh Power Plant in Titus County, Texas (the "Welsh Plant"). *See* Dkt. No. 61. Plaintiffs allege that SWEPCO, a subsidiary of AEP, owns and operates the Welsh Plant. *Id.* at ¶ 24. Plaintiffs allege the Welsh Plant comprises three coal-fired electric generating units ("Unit 1", "Unit 2", and "Unit 3," respectively), which became operational in 1977, 1980, and 1982, respectively. *Id.*

## II.  LEGAL PRINCIPLES

In a motion for summary judgment, the moving party has the initial burden of showing that there is no genuine issue of any material fact and that judgment should be entered as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986).  "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986).  An issue is "material" where it involves a fact that might affect the outcome of the suit under the governing law of the underlying cause of action.  *See Burgos v. S.W. Bell Tel. Co.,* 20 F.3d 633, 635 (5th Cir. 1994) (citing *Anderson,* 477 U.S. at 248)).  The nonmovant is not required to respond to a motion for summary judgment until the movant first meets its burden of demonstrating that there are no factual issues warranting trial.  *Ashe v. Corley,* 992 F.2d 540 (5th Cir. 1993).  Once the movant has shown the absence of material fact issues, however, the opposing party has a duty to respond, via affidavits or other means, asserting specific facts showing that there is a genuine issue for trial.  Fed. R. Civ. P. 56(e).  "Summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Liberty Lobby*, 477 U.S. at 248.

## III.  DISCUSSION

Plaintiffs move for a ruling that: (1) heat input limits in the Welsh permit are "standards or limitations" within the meaning of the Clean Air Act; (2) the particulate matter limit in the Welsh permit is a limit on the sum of filterable and condensable particles; (3) there is no exemption for one opacity exceedance per hour; and (4) Defendants are liable and subject to injunctive relief and penalties for opacity exceedances that result from maintenance activities.

Defendants respond that Plaintiffs cannot properly seek declaratory relief because they have not invoked the Declaratory Judgment Act.  Dkt. No. 52 at 5.  Instead, Defendants argue, Plaintiffs inappropriately seek summary judgment on "less than entire claims."  *Id.* at 6.  Plaintiffs reply that the Court may make rulings of law on any part of a claim.  Dkt. No. 55 at 5.  In sur-reply, Defendants reiterate their argument that "issue-narrowing" summary judgment motions are inappropriate.  Dkt. No. 58 at 1.

Plaintiffs have not brought claims for declaratory relief pursuant to 28 U.S.C. § 2201.  *See* Dkt. No. 61.  The Court therefore treats Plaintiffs' motion as a motion for partial summary judgment pursuant to Federal Rule of Civil Procedure 56.

**A.  Heat Input Limits**

Plaintiffs argue that heat input limits are "stardards or limitations" because the permit emissions limits are expressed in lbs/MMBtu (pounds per million British thermal units).  Dkt. No. 46 at 11-12.  Thus, Plaintiffs argue, enforcing emissions limits requires enforcing heat input limits.  *Id.* at 13.

Defendants argue that heat input is not a limitation because the permit does employ the usual "shall not exceed" language when describing heat input.  Dkt. No. 52 at 12.  Defendants also argue that there is no "direct correlation" between heat input and emissions because there are other variables.  *Id.* at 13.

Plaintiffs reply that the word "maximum" is used in describing the 5,156 MMBTU/hour heat rate and therefore that rate is a permit limit.  Dkt. No. 55 at 6-7.  Plaintiffs argue that Defendants' evidence of the TCEQ's interpretation is inadmissable hearsay.  *Id.* at 8.

In sur-reply, Defendants emphasize declarations by Texas permit experts that heat input

figures are not enforceable limits without mandatory language, such as "shall not exceed." Dkt. No. 58 at 2. As to the hearsay objection, Defendants argue that the residual exception applies. *Id.* at 3-4. As to the Blanchard letter, Defendants reiterate that "maximum" heat input referred to the maximum heat input for which the plant was designed rather than an enforceable limit. *Id.* at 4-5.

The applicable permit specifies pollutant limits as lbs/MMBtu for the boiler units "while firing at full load." Dkt. No. 52, Exh. 1 at 5. In specifying the pollutant limits, the permit usually uses the words "shall not exceed." *Id.* For example, the permit uses such language to set limits for emissions of oxides of nitrogen, carbon monoxide, sulfur dioxide, particulate matter, and volatile organic compounds. *Id.* As to fuel sulfur content, the permit uses the words "shall be limited" to set the limit. *Id.* at 6. This creates a reasonable inference that only where the permit uses the language "shall not exceed" does the permit set an enforceable "emission standard or limitation." Because "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor," the Court finds a genuine issue of material fact exists as to whether the heat input rate is an "emission standard or limitation" under the CAA. *Liberty Lobby,* 477 U.S. at 255. Summary judgment should therefore be **DENIED** on this issue.

**B. Particulate Matter**

Plaintiffs seek a ruling on the allegation that "PM violations must be determined using total particulate emissions (adding both the front and back halves of stack test measurements for PM) . . . ." Dkt. No. 61 at ¶ 42. "Filterable" particulate matter (PM) is that which is trapped by a filter in a smokestack at 120 degrees Celsius. Dkt. No. 46 at 15-16. PM that remains gaseous at 120 degrees Celsius and then condenses in the air as it leaves the smokestack is termed

"condensable" PM. *Id.* Condensable PM may also be referred to as "impinger catch." *Id.* Plaintiffs argue that Texas' practice is to include both filterable and condensable PM to determine PM emissions. *Id.* at 16.

Defendants argue that PM limits only include filterable (also referred to as "front half") PM. Dkt. No. 52 at 15. Defendants argue that Plaintiffs rely on a definition of PM emissions inapplicable to the Welsh plant permits. *Id.* Defendants argue that the original limits, purportedly still applicable, are based on filterable (front-half) measurements pursuant to EPA Method 5. *Id.* at 19-22 (citing what is now 40 C.F.R. § 60.46(b)(2)).

Plaintiffs reply that Texas has included both filterable and condensable PM in its PM limits since 1988. Dkt. No. 55 at 8-9. In sur-reply, Defendants argue that the 1988 change in the meaning of PM did not affect the limits in Defendants' pre-existing permits. Dkt. No. 58 at 5-6.

Defendants present evidence suggesting that the PM limits are front-half-only limits. For example, the Unit 2 PM limit is .075 lb/MMBtu. Dkt. No. 52, Exh. 1 at 5. Defendant demonstrates that "[t]he Unit 2 limit of .075 lb/MMBtu is identical to the 'front half only' emission rate determined during stack testing which was conducted at Unit 2 in 1980." Dkt. No. 52 at 19 (citing Exh. 5 at 20). Defendants also present evidence that permit renewal maintained the original limits. Dkt. No. 52, Exh. 20 at 2. Because "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor," the Court finds a genuine issue of material fact exists as to whether the applicable PM limits only include filterable (front-half) particles. *Liberty Lobby,* 477 U.S. at 255. Summary judgment should therefore be **DENIED** on this issue.

**C. Opacity**

    **1. Whether an Automatic One-Exceedance-Per-Hour Exemption Applies**

Opacity is a measure of the amount of soot in a stream of gas.  Dkt. No. 46 at 17.  The exhaust stacks at the Welsh Plant each have an electronic continuous monitoring system ("COMS") to measure and record opacity.  *Id.*  COMS measures opacity by shining a light beam across the exhaust stack to a reflector, which bounces the beam back to a detector, which measures the light intensity loss.  *Id.* at 17-18.  Federal New Source Performance Standards ("NSPS") regulations limit opacity to 20%, measured as an average over six minutes.  40 C.F.R. 60.42(a)(2) ("[N]o owner or operator subject to the provisions of this subpart shall cause to be discharged into the atmosphere from any affected facility any gases which . . . exhibit greater than 20 percent opacity except for one six-minute period per hour of not more than 27 percent opacity.")

Plaintiffs argue that the PSD and Title V permit opacity limits are more stringent than the NSPS limit in 40 C.F.R. 60.42(a)(2).  *Id.* at 18-19.  Plaintiffs assert that the PSD permit provides that where more than one limit applies, the more stringent condition shall govern.  *Id.* at 19.  In particular, Plaintiffs argue that while the NSPS allows one six-minute period of opacity of 20%-27%, the PSD permit provides no such exception.  Instead, the PSD permit allows for exceedance for six minutes per hour during "cleaning of a firebox or building of a new fire, soot blowing, equipment changes, ash removal, and rapping of precipitators."  *Id.* at 18.  Plaintiffs thus argue that Defendants cannot automatically remove one 6-minute period of exceedance between 20% and 27% every hour, as they have done in their quarterly reports.  Dkt. No. 46 at 19.

Defendants argue that the COMS monitoring data cannot be used as a basis for liability because NSPS opacity liability can only be based on EPA Method 9 test data. Dkt. No. 52 at 24. Method 9 is a visual method that can only be done during the day and is, Defendant argue, less stringent than the continuous opacity monitoring system ("COMS") data that Defendants collect themselves. *Id.* at 24-26.

As to the method of measuring opacity, Plaintiffs cite the "credible evidence rule," which provides that citizens bringing private suits may use any credible evidence to establish a violation. Dkt. No. 55 at 11 (citing 62 Fed. Reg. 8314, 8317 (Fed. 24, 1997) & 40 C.F.R. § 60.11(g)). Plaintiffs argue that the EPA has rejected Defendants argument that test methods that increase stringency are not allowed. *Id.* at 11-12 (discussing 62 Fed. Reg. 8314, 8326 (Fed. 24 1997) & *Sierra Club. v. Tenn. Valley Auth.*, 430 F.3d 1337, 1348 (11th Cir. 2005)).

Defendants argue that the burden is on Plaintiffs to present evidence of violations. *Id.* at 6-7. Defendants argue that Plaintiffs fail to meet this burden. First, Defendants argue that Plaintiffs have not shown that COMS data are "credible evidence." *Id.* at 8 (citing 40 C.F.R. § 60.11(b) & (e). Defendants argue that Plaintiffs must show that COMS data are a "suitable surrogate for Method 9 data . . . ." *Id.* at 9.

Special Condition 5 of the Welsh Plant's permit provides that opacity "must not exceed 20 percent averaged over a six-minute period, except for those periods described in . . . 30 [Tex. Admin. Code] Section 111.111(a)(1)(E)," which in turn provides:

> Visible emissions during the cleaning of a firebox or the building of a new fire, soot blowing, equipment changes, ash removal, and rapping of precipitators may exceed the limits set forth in this section for a period aggregating not more than six minutes in any 60 consecutive minutes, nor more than six hours in any 10-day period.

Dkt. No. 52, Exh. 1 at 6; 30 Tex. Admin. Code. § 111.111(a)(1)(E).  These exemptions raise factual questions as to each opacity exceedance alleged by Plaintiffs.  Defendants aver that "the soot blower cycle is continuous" and "[p]recipitator rapping occurs on a continuous basis during normal operation of the units."  Dkt. No. 52, Exh. 4 at ¶ 9.  Because "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor," the Court finds a genuine issue of material fact exists as to the continuous applicability of exceedance exemptions.  *Liberty Lobby,* 477 U.S. at 255.  Summary judgment should therefore be **DENIED** on this issue.  Having found a genuine issue of material fact as to the applicability of the exceedance exemption, the Court need not decide whether COMS monitoring data may be used as a basis for liability, under the "credible evidence rule" or otherwise.

### 2. Whether Certain Alleged Exceedences Qualify for "Maintenance" Exemption

Plaintiffs argue that exceedances that occur during scheduled maintenance activities are not exempt from NSPS requirements.  Dkt. No. 46 at 20.  Plaintiffs move for summary judgment on liability as to exceedances during scheduled maintenance.  *Id.* at 21.

Defendants rely upon an interpretation by the Texas Commission on Environmental Quality to argue that the exception to the opacity limit for periods of shutdown applies to scheduled maintenance.  Dkt. No. 52 at 28.  Defendants argue that genuine issues of material fact exist as to whether any exceedence claimed by Plaintiffs was exempt as "startup," "shutdown," or other exempt activities.  *Id.* at 29-30.

In reply, Plaintiffs argue that, to avoid summary judgment, Defendants have the burden of showing the applicability of exceptions to permit limits.  Dkt. No. 55 at 9-10.  As to the TCEQ's interpretation of exceptions, Plaintiffs argue that Defendants cited authority does not apply to

EPA-approved state implementation plans ("SIPs").  *Id.* at 12-15.

In sur-reply, Defendants reiterate their argument that many activities resulting in opacity exceedances were part of exempt activities.  Dkt. No. 58 at 10.  Defendants argue that the Court must accept Texas' interpretation of opacity standards as providing an exemption for scheduled maintenance activities.  *Id.* at 11.

The federal NSPS opacity limits "apply at all times except during periods of startup, shutdown, malfunction, and as otherwise provided in the applicable standard."  40 C.F.R. § 60.11(c).  Defendants present a TCEQ interpretation of § 60.11(c) that exempts scheduled maintenance from NSPS opacity limits, although the requirements of 30 Tex. Admin. Code. § 111.111 (*see* § III.C.1, *supra*) still apply.  Dkt. No. 52, Exh. 5 at 9.  In particular, the agency advised that "a boiler is considered to be in shutdown mode – and not subject to opacity limits – whenever it is: (1) in the process of going through an operational sequence leading to a shutdown; or (2) not operating (i.e., not receiving fuel or airflow through the burners)."  *Id.* at 10.  Defendant avers that "Plaintiffs list 'excess emissions' during 'boiler grit blasting,' 'explosive grit blasting,' and 'precipitator grity blasting,' among others . . . .  These activities cannot occur while the units [are] operating, and therefore only occur during shutdown."  Gaus Decl., Dkt. No. 52, Exh. 5 at ¶ 9.  Because "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor," the Court finds a genuine issue of material fact exists as to whether or not the purported exceedances identified by Plaintiffs are exempt from the relevant opacity limits.  *Liberty Lobby,* 477 U.S. at 255.  Summary judgment should therefore be **DENIED** on this issue.

## IV.  CONCLUSION

For all of the foregoing reasons, Plaintiffs' Motion for Declaratory Judgment and Partial Summary Judgment on Claims I, II, and IV (Dkt. No. 46) is hereby **DENIED**.

**SIGNED this 27th day of December, 2006.**

_____
DAVID FOLSOM
UNITED STATES DISTRICT JUDGE