# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### TEXARKANA DIVISION

| | |
|---|---|
| PUBLIC CITIZEN, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| AMERICAN ELECTRIC POWER | ) Civil Action No. |
| COMPANY, INC., et al., | ) 5:05-cv-00039-DF |
| | ) |
| Defendants. | ) |
| _____ | ) |

## CONSENT DECREE

WHEREAS, the Public Citizen and the Sierra Club (collectively "Plaintiffs") served notice of intent to sue letters ("Notice Letters") dated July 13, 2004, June 2, 2005, and September 27, 2006, and filed a Complaint on March 9, 2005, and Amended Complaints on August 12, 2005, and July 26, 2006 (collectively, "Complaints") against American Electric Power Company, Inc. ("AEP") and Southwestern Electric Power Company ("SWEPCO") (collectively, "Defendants") pursuant to Section 7604(a) of the Clean Air Act (the "Act") and 28 U.S.C. § 1331, for injunctive relief and civil penalties for alleged violations of the Act at the Welsh Power Plant ("Welsh Plant") located in Pittsburg, Texas, including but not limited to:

(a)    the Prevention of Significant Deterioration ("PSD") provisions in Part C of Subchapter I of the Act, 42 U.S.C. §§ 7470-92, and permits issued to implement the PSD program;

(b)     the New Source Performance Standards ("NSPS") in Section 111 of the Act, 42 U.S.C. § 7411, and related permit provisions;

(c)     certain provisions of the Texas State Implementation Plan ("SIP"), approved under Section 110 of the Act, 42 U.S.C. § 7410, and permits incorporating these provisions; and

(d)     the provisions of Title V of the Act, 42 U.S.C. § 7661 *et seq.,* and the Title V permits issued by the State of Texas;

WHEREAS, in their Complaints, Plaintiffs allege, *inter alia*, that Defendants failed to obtain the necessary permits and install the controls required by the Act, and that Defendants violated various PSD, NSPS, SIP and/or preconstruction and/or operating permit conditions at Welsh Plant;

WHEREAS, Defendants have denied and continue to deny the violations alleged in the Complaints; maintain that they have been and remain in compliance with the applicable requirements of the Act, the PSD program, the NSPS, the Texas SIP, and the applicable preconstruction and operating permits, and are not liable for civil penalties or injunctive relief; and state that they consent to the obligations imposed by this Consent Decree solely to avoid the costs and uncertainties of litigation;

WHEREAS, prior to and since their receipt of the Notice Letters, Defendants have installed and continue to install replacement components in the particulate matter pollution control equipment, including the installation of rigid electrodes within the electrostatic precipitators, installation of improved control systems, and installation and maintenance of improved sootblowers, that have reduced and will continue to reduce opacity and PM emissions;

WHEREAS, the Parties have negotiated in good faith and have reached a settlement of the issues raised in the Notice Letters and the Complaints;

WHEREAS, the Parties have consented to entry of this Consent Decree without trial of any issue, and without any admission, adjudication or determination of liability;

WHEREAS, subsequent to the Parties' agreement in principle to resolve this matter, but prior to the lodging of this Consent Decree with the Court, Defendants received a Notice of Violation ("NOV") dated February 5, 2008, issued by the United States Environmental Protection Agency ("U.S. EPA"), containing allegations similar or identical to some of the allegations made by Plaintiffs in their Notice Letters and/or Complaints;

and

WHEREAS, the Parties agree, and the Court by entering this Consent Decree finds, that this Consent Decree is fair, reasonable, and in the public interest; and that entry of this Consent Decree without further litigation is the most appropriate means of resolving this matter;

NOW, THEREFORE, without any admission of fact or law, and without any admission of the violations alleged in the Complaints, Notice Letters and otherwise; it is hereby ORDERED, ADJUDGED, AND AGREED as follows:

## I.     JURISDICTION AND VENUE

1.     This Court has jurisdiction over this action, the subject matter herein, and the Parties consenting hereto, pursuant to 28 U.S.C. § 1331 and Section 7604(a) of the Act.  Venue is proper in the Eastern District of Texas under Section 7604(c)(1) of the Act, and 28 U.S.C. § 1391(b), because the Welsh Plant is located in this district.

## II.    APPLICABILITY

2.        Upon entry, the provisions of this Consent Decree shall apply to and be binding upon the Parties, their successors and assigns.

## III.    DEFINITIONS

3.        "Clean Air Act" or "Act" means the federal Clean Air Act, 42 U.S.C. §§7401- 7671q.

4.        **"**Consent Decree" or "Decree" means this Consent Decree.

5.        "Defendants" means American Electric Power Company, Inc. and Southwestern Electric Power Company.

6.        "Effective Date" means the date this Consent Decree is approved or signed by the United States District Judge and entered as a final order of the Court, following notice to and an opportunity for objections to be filed by U.S. EPA.

7.        "NSPS" means New Source Performance Standards within the meaning of Part A of Subchapter I, of the Clean Air Act, 42 U.S.C. § 7411, 40 C.F.R. Part 60.

8.        "Parties" means Plaintiffs and Defendants.

9.        "Plaintiffs" means Public Citizen and Sierra Club.

10.        "PM" means particulate matter.

11.        "PM Continuous Emissions Monitors" or " PM CEMs" means devices for measuring particulate matter emissions that is installed, operated and maintained in accordance with the requirements of 40 CFR §60.49Da(v).

12.        "PSD" means Prevention of Significant Deterioration within the meaning of Part C of Subchapter I of the Clean Air Act, 42 U.S.C. §§ 7470 - 7492 and 40 C.F.R. Part 52.

13.     "Renewable Energy" means energy produced from generation resources utilizing wind power, solar power, hydroelectric power or any other noncarbon energy production process.

14.     "Unit" means, solely for the purposes of this Consent Decree, collectively, the coal pulverizer, stationary equipment that feeds coal to the boiler, the boiler that produces steam for the steam turbine, the steam turbine, the generator, the equipment necessary to operate the generator, steam turbine and boiler, and all ancillary equipment, including pollution control equipment and systems necessary for the production of electricity.

15.     "Welsh Plant" means, for purposes of this Consent Decree, the three pulverized coal-fired units located at the Welsh Power Plant, located in Pittsburg, Texas.

16.     "Welsh Plant Unit" means any one of the three pulverized coal-fired units located at Welsh Plant.

## IV.    PM EMISSION MONITORING

### A.    PM Emission Monitor Installation and Operation

17.     By no later than December 31, 2010, SWEPCO will install, calibrate, operate and maintain PM CEMs on each of the three Welsh Plant Units, as specified below.  Each PM CEM shall include a continuous particle mass monitor measuring particulate matter concentration, directly or indirectly, on an hourly average basis, and a diluent monitor used to convert the concentration to units of lb/mmBtu.  SWEPCO will maintain, in an electronic database, the hourly average emission values produced by all PM CEMs in lb/mmBtu.  Except for periods of monitor calibration and maintenance, SWEPCO shall use reasonable efforts to keep the PM CEMs operating and producing data whenever any Unit served by a PM CEMs is synchronized with an electric utility

distribution system, through the time that Unit ceases to combust coal and the fire is out in the boiler.

### B.    Demonstration that PM CEMs Are Infeasible

18.    SWEPCO shall operate and maintain the PM CEMs for a period of at least two (2) years on each of the Welsh Plant Units.   After two (2) years of operations, SWEPCO may attempt to demonstrate that it is infeasible to continue operating the PM CEMs.   As part of this demonstration, SWEPCO shall submit an alternative PM monitoring plan for review and approval by Plaintiffs.   The plan shall explain the basis for ceasing operation of the PM CEMs, and propose an alternative PM monitoring plan. If Plaintiffs reject the alternative PM monitoring plan proposed by SWEPCO, or reject SWEPCO's claim that it is infeasible to continue operating the PM CEMs, such disagreement is subject to Section VIII (Dispute Resolution).

19.    Operation of the PM CEMs shall be considered no longer feasible if: (a) the PM CEMs cannot be kept in proper condition for sufficient periods of time to produce reliable, adequate, or useful data consistent with the QA/QC protocol, or (b) SWEPCO demonstrates that recurring, chronic, or unusual equipment adjustment or servicing needs in comparison to other types or forms of PM monitoring cannot be resolved through reasonable expenditures of resources.   If Plaintiffs concur or the Court determines that SWEPCO has demonstrated pursuant to this Paragraph that operation is no longer feasible, SWEPCO will be entitled to discontinue operation of and remove the PM CEMs.

20.    Until Plaintiffs approve SWEPCO's claim of infeasibility and an alternative PM monitoring plan, or until the conclusion of any Dispute Resolution proceeding under Section VIII of this Consent Decree, SWEPCO shall continue to

operate the PM CEMs. If Plaintiffs have not given SWEPCO written notice of their agreement with or rejection of SWEPCO's claim and proposal under Paragraph 19 within one hundred twenty (120) days of receipt of the proposal, the claim and proposal shall be deemed approved by Plaintiffs.

### C. PM Compliance Method

21. Stack testing shall be used to determine compliance with the PM emission limitations contained in SWEPCO's permits, however, data from PM CEMS shall be used, at a minimum, to monitor progress in reducing PM emissions.

22. Nothing in this Consent Decree is intended to, or shall, alter or waive any applicable law (including but not limited to any defenses, entitlements, challenges, or clarifications related to the Credible Evidence Rule, 62 Fed. Reg. 8314 (February 24, 1997)) concerning the use of data for any purpose under the Act generated either by the reference methods specified herein or otherwise.

## V. ADDITIONAL COMMITMENTS

### A. Renewable Energy

23. By no later than December 31, 2010, SWEPCO will provide proof to Plaintiffs that it has secured long-term purchase power agreements or entered into equivalent alternative arrangements to secure Renewable Energy from 65 MW of new Renewable Energy generation capacity located in Arkansas, Texas, and/or Louisiana. Power purchase agreements or other arrangements to which SWEPCO has a binding contractual commitment as of the date of lodging of this Consent Decree with the Court cannot be used to satisfy this obligation.

24.     Implementation of the Renewable Energy obligations imposed by this Consent Decree is subject to SWEPCO obtaining required regulatory approvals from its state public service commissions and other applicable regulators, including approvals necessary for full cost recovery through retail rates.  If SWEPCO has sought and is unable to obtain such approvals from regulators in any of the three states with jurisdiction over SWEPCO, despite its timely and reasonable efforts, SWEPCO shall have no further obligation with respect to any portion of the Renewable Energy commitments under this Consent Decree for which approval has not been obtained.

25.     Nothing in this Section V shall preclude SWEPCO from relying on the investments made, or power purchase contracts entered into pursuant to this Consent Decree to demonstrate compliance with, seek renewable energy credits for, or otherwise satisfy the requirements of or participate in any federal, state or local statutory or regulatory programs regarding Renewable Energy or climate change-related requirements.

**B.     Mitigation Projects**

26.     SWEPCO shall implement and/or fund the Mitigation Projects described in this Consent Decree in compliance with the approved plans and schedules for such projects and other terms of this Consent Decree.  SWEPCO shall expend moneys and/or implement projects cumulatively valued at no less than $2 million.  SWEPCO shall fund and/or implement such projects over the period beginning sixty (60) days after the entry of this Consent Decree and ending on December 31, 2012.  SWEPCO may propose

establishing one or more qualified settlement funds within the meaning of Treas. Reg. §1.468B-1 in conjunction with one or more Mitigation Projects.

27.     In partial satisfaction of the obligation to undertake Mitigation Projects, by no later than December 31, 2008, SWEPCO shall arrange for the installation of one ambient PM monitoring station to monitor and classify by size fraction the PM in the ambient air at a location to be determined in consultation with the Texas Commission of Environmental Quality ("TCEQ") within TCEQ Region 5.  SWEPCO shall provide the necessary funds for installation, certification, calibration, operation, and maintenance of the monitor through December 31, 2012.

28.     By no later than March 31, 2009, SWEPCO shall develop and provide to Plaintiffs a proposed plan for the balance of the $2 million provided for Mitigation Projects under this Section V of this Consent Decree, and an estimate of the amounts expended and any remaining amount of funding required to fully implement the ambient PM monitoring project required by Paragraph 27 of this Consent Decree. Defendants shall certify, as part of the plan submitted to Plaintiffs, that Defendants are not otherwise required by law to perform any of the Projects described in the plan, that Defendants are unaware of any other person who is required by law to perform any of the Projects, and that Defendants will not use any Project, or portion thereof, to satisfy any obligations that either may have under other applicable requirements of law, including any applicable renewable portfolio standards. Mitigation Projects that may be eligible to be included in the plan include, but are not limited to: (a) projects that reduce or eliminate emissions of sulfur dioxide, nitrogen oxides, mercury or other hazardous air pollutants or PM, at the Welsh Plant or at the Welsh Plant Units; (b) projects that provide improved monitoring of emissions or other

compliance requirements at the Welsh Plant; (c) projects that produce reductions in emissions of sulfur dioxide, nitrogen oxides, mercury or other hazardous air pollutants or PM at other emission sources in Texas; (d) projects that reduce auxiliary loads or other energy requirements at the Welsh Plant or customer locations in Texas served by SWEPCO; (e) projects that reduce emissions from motor vehicles or non-road engines operated by SWEPCO or located at customer locations in Texas served by SWEPCO (f) projects that improve air quality or the monitoring of air quality in Class I areas in states served by SWEPCO; and/or (g) projects that result in the acquisition and/or restoration of ecologically significant areas in states served by SWEPCO.

29.     Plaintiffs shall review and approve the plan, or provide comments or suggestions to revise the plan to SWEPCO within sixty (60) days of receipt.  If Plaintiffs fail to provide comments within sixty (60) days, SWEPCO shall implement the plan as proposed.  If Plaintiffs timely provide comments or suggestions on the plan, the Parties shall have an additional sixty (60) days to reach agreement on the plan.  If the Parties are unable to reach agreement on the elements of the plan within one hundred twenty (120) days of Plaintiffs' receipt of the plan, the Parties shall submit the matter to the Court for resolution pursuant to Section VIII (Dispute Resolution).

30.     SWEPCO shall implement the plan approved by Plaintiffs or the Court in accordance with the schedule therein (as modified, if necessary, to account for the passage of time during any Dispute Resolution proceedings), and shall maintain, and present to Plaintiffs upon request, all documents to substantiate the amounts expended to implement the Mitigation Projects.   SWEPCO shall provide documents to Plaintiffs within thirty (30) days of a request for the documents.

31.     Within sixty (60) days following the completion of each Mitigation Project required under this Consent Decree (including any applicable periods of demonstration or testing), SWEPCO shall submit to Plaintiffs a report that documents the date that the Mitigation Project was completed, SWEPCO's results of implementing the Mitigation Project, including the emission reductions or other environmental benefits achieved, and the amount expended by SWEPCO in implementing the Mitigation Project.

**C.      PM CAM Plan**

32.     At the time SWEPCO submits its 2009 Title V renewal application for the Welsh Plant, SWEPCO will include a compliance assurance monitoring plan that will be used to demonstrate compliance with PM emission limits that are applicable requirements in the Title V permit for the Welsh Plant Units.

## VI.     RELEASE AND RESOLUTION OF CLAIMS

33.     Entry of this Consent Decree shall resolve all claims of Plaintiffs relating to any activities, omissions, practices, or events at the Welsh Plant that first occurred or could have been alleged to occur prior to the Effective Date, including but not limited to those claims and actions alleged in the Complaints and Notice Letters in this civil action.

34.     Plaintiffs specifically release any and all claims alleging violations of the PSD program or any other preconstruction permitting requirements allegedly applicable to the Welsh Plant based on activities, omissions, practices, or events that occurred or could have been alleged to occur prior to the Effective Date of this Consent Decree, and that occur at any time prior to the termination of this Consent Decree.

35.     Plaintiffs specifically release any and all claims related to whether the PM emission limits appearing in SWEPCO's permits for the Welsh Plant apply to the filterable, condensable, or combined total PM emitted by the units, and any and all claims alleging violations of those PM emission limits, based on activities, omissions, practices, or events that occurred at the Welsh Plant prior to the Effective Date of this Consent Decree, and that occur at any time prior to the termination of this Consent Decree.

36.     Plaintiffs further release any and all claims related to the allegations made in the Notice Letters dated July 13, 2004, and March 28, 2005, concerning SWEPCO's Knox Lee Power Plant located in Longview, Texas.

37.     Plaintiffs agree not to seek any relief at the Welsh Plant with respect to any activities, omissions, practices or events that occurred or were in existence at the Welsh Plant as of the date this Consent Decree is lodged with the Court, from any state, federal, or local court, agency, commission, department, or other body, whether through petitions, requests, demands, claims, suits, appeals, or any other action.  However, this Consent Decree does not restrain Sierra Club's continued involvement in the 42 U.S.C. § 7413(a)(5) petition it and Environmental Defense Fund have filed with EPA regarding the Texas PSD Program, provided that Sierra Club shall not make any additional allegations concerning the Welsh Plant that identify any activities, omissions, practices or events that occurred or were in existence at the Welsh Plant as of the date this Consent Decree beyond those allegations already made in the petition.  Furthermore, Sierra Club is not restrained from amending the petition or filing a new 42 U.S.C. § 7413(a)(5) petition that does not reference or draw evidentiary examples from the Welsh Plant.  The

exception for the 42 U.S.C. § 7413(a)(5) petition(s), above, does not extend to any other petition, request, demand, claim, suit, appeal, or any other action.

38. Within five (5) business days after the Effective Date of this Consent Decree, Plaintiffs will voluntarily dismiss with prejudice the actions filed in *Sierra Club, et al., v. TCEQ*, Cause No. D-1-GN-07-001173 and *Sierra Club, et al., v. TCEQ*, Cause No. D-1-GN-07-002187 in the Travis County District Court in Austin, Texas, which on January 18, 2008, were consolidated into Cause No. D-1-GN-07-001173.

## VII. *FORCE MAJEURE*

39. For purposes of this Consent Decree, a "*Force Majeure* Event" shall mean an event that has been or will be caused by circumstances beyond the control of Defendants, their contractors, or any entity controlled by Defendants that delays or impedes compliance with any provision of this Consent Decree or otherwise causes a violation of any provision of this Consent Decree despite Defendants' best efforts to fulfill the obligation. "Best efforts to fulfill the obligation" include using best efforts to anticipate any potential *Force Majeure* Event and to address the effects of any such event (a) as it is occurring and (b) after it has occurred, such that the delay or violation is minimized.

40. If any event occurs or has occurred that may delay compliance with or otherwise cause a violation of any obligation under this Consent Decree, as to which Defendants intend to assert a claim of *Force Majeure*, Defendants shall notify Plaintiffs in writing as soon as practicable, but in no event later than twenty-one (21) days following the date that the Defendants first knew, or by the exercise of due diligence should have known, of the event. In this notice, Defendants shall describe the anticipated length of time that the delay or violation may persist, the cause or causes of the delay or

violation, all measures taken or to be taken by Defendants to prevent or minimize the delay or violation, the schedule by which Defendants propose to implement those measures, and Defendants' rationale for attributing a delay or violation to a *Force Majeure* Event. Defendants shall adopt all reasonable measures to avoid or minimize such delays or violations. Defendants shall be deemed to know of any circumstance which Defendants or any entity controlled by Defendants knew or should have known.

41.     The Plaintiffs shall notify Defendants in writing regarding Defendants' claim of *Force Majeure* within twenty (20) business days of receipt of the notice provided under the preceding Paragraph. If the Plaintiffs agree that a delay in performance has been or will be caused by a *Force Majeure* Event, the Parties shall stipulate to an extension of deadline(s) for performance of the affected compliance requirement(s) by a period equal to the delay actually caused by the event. In such circumstances, an appropriate modification shall be made pursuant to Section XIX (Modification) of this Consent Decree.

42.     If the Plaintiffs do not accept Defendants' claim of *Force Majeure*, or if the Parties cannot agree on the length of the delay actually caused by the *Force Majeure* Event, the matter shall be resolved in accordance with Section XII (Dispute Resolution) of this Consent Decree.

43.     Unanticipated or increased costs or expenses associated with the performance of Defendants' obligations under this Consent Decree shall not constitute a *Force Majeure* Event.

44.     The Parties agree that, depending upon the circumstances related to an event and Defendants' response to such circumstances, the kinds of events listed below

are among those that could qualify as *Force Majeure* Events within the meaning of this Section: construction, labor, equipment, or permitting delays; acts of God; acts of war or terrorism; and orders by a court, a government official, government agency, or other regulatory body acting under and authorized by applicable law that denies approval for a project, including any Mitigation Project or Renewable Energy project. Depending upon the circumstances and Defendants' response to such circumstances, failure of a federal, state, or local agency or commission to issue a necessary permit, license, approval or order may constitute a *Force Majeure* Event where the failure of the authority to act is beyond the control of Defendants and Defendants have taken all steps available to them to obtain the necessary permit, license, approval or order, including, but not limited to: submitting a complete permit application; responding to requests for additional information by the permitting authority in a timely fashion; and accepting lawful permit terms and conditions after expeditiously exhausting any legal rights to appeal terms and conditions imposed by the permitting authority.

45.    As part of the resolution of any matter submitted to this Court under Section VIII (Dispute Resolution) of this Consent Decree regarding a claim of *Force Majeure*, the Parties by agreement, or this Court by order, may in appropriate circumstances extend or modify the schedule for completion of work under this Consent Decree to account for the delay in the work that occurred as a result of any delay agreed to by Plaintiffs or approved by the Court, or excuse non-compliance with any other requirement of this Consent Decree attributable to a *Force Majeure* event.

## VIII.   DISPUTE RESOLUTION

46.      The dispute resolution procedure provided by this Section shall be available to resolve all disputes arising under this Consent Decree, including any alleged breach of this Consent Decree by one of the Parties.

47.      The dispute resolution procedure required herein shall be invoked by one Party giving written notice to the other Party advising of a dispute pursuant to this Section.  The notice shall describe the nature of the dispute and shall state the noticing Party's position with regard to such dispute.  The Party receiving such a notice shall acknowledge receipt of the notice, and the Parties shall expeditiously schedule a meeting to discuss the dispute informally not later than fourteen (14) calendar days following receipt of such notice.

48.      Disputes submitted to dispute resolution under this Section shall, in the first instance, be the subject of informal negotiations among the Parties.  Such period of informal negotiations shall not extend beyond thirty (30) calendar days from the date of the first meeting among the disputing Parties' representatives unless they agree in writing to shorten or extend this period.

49.      If the Parties are unable to resolve the dispute through the informal process described above, the disputing Party waives its rights to further dispute the issue unless, within ten (10) business days of the conclusion of the period for informal resolution provided in Paragraph 48, it files a petition with the Court describing the dispute and serves it on the other Parties.  The other Parties shall have twenty (20) business days after the receipt of the petition to file and serve a written response.

50.      As part of the resolution of any dispute under this Section, in appropriate circumstances the Parties by agreement, or this Court by order, may extend or modify the

schedule for the completion of the activities required under this Consent Decree to account for the delay that occurred as a result of dispute resolution, or may excuse non-compliance with any other requirement of this Consent Decree that occurred during the dispute resolution period.  Defendants shall not be precluded from asserting that a *Force Majeure* Event has caused or may cause a delay in complying with the extended or modified schedule.

## IX.    NOTICES

51.    Unless otherwise provided herein, whenever notifications, submissions, or communications are required by this Consent Decree, they shall be made in writing and addressed as follows:

As to Plaintiffs:

Mr. David Frederick
Lowerre, Frederick, Perales, Allmon & Rockwell
44 East Avenue, Suite 100
Austin, TX  78701

Phone: (512) 469-6000
Fax:  (512) 482-9346
E-Mail:  DOF@lf-lawfirm.com

And

Mr. Eric Schaeffer
Environmental Integrity Project
1920 L Street N.W., Suite 800
Washington, D.C. 20036

Phone: (202) 296-8800
Facsimile: (202) 296-8822
E-Mail: eschaeffer@environmentalintegrity.org

As to Defendants:

John M. McManus
Vice President, Environmental Services

American Electric Power Service Corporation
1 Riverside Plaza
Columbus, OH  43215

Phone: (614) 716-1000
Fax: (614) 716-1252
E-Mail:  jmmcmanus@aep.com

And

Janet J. Henry
Associate General Counsel
Environment, Health & Safety
1 Riverside plaza
Columbus, OH 43215

Phone: (614) 716-1612
Fax: (614) 716-1687
E-mail:  jjhenry@aep.com

52.    All notifications, communications or submissions made pursuant to this

Section shall be sent either by: (a) overnight mail or delivery service; (b) certified or

registered mail, return receipt requested; or (c) electronic transmission, unless the

recipient is not able to review the transmission in electronic form. All notifications,

communications and transmissions (a) sent by overnight, certified or registered mail shall

be deemed submitted on the date they are postmarked, or (b) sent by overnight delivery

service shall be deemed submitted on the date they are delivered to the delivery service.

All notifications, communications, and submissions made by electronic means shall be

deemed submitted on the date that sender receives written or electronic acknowledgment

of receipt of such transmission.

53.    Any Party may change either the notice recipient or the address for

providing notices to it by serving the other Parties with a notice setting forth such new

notice recipient or address.

## X.    NOTICE OF DECREE

54.    Pursuant to 42 U.S.C. § 7604(c)(3), this Consent Decree shall be lodged with the Court and simultaneously provided to the United States for review and comment for a period not to exceed forty-five (45) days.

55.    If the United States confirms that it has no objections, and does not intervene within 45 days of receipt, the Parties shall submit a joint motion to the Court seeking entry of the Consent Decree.  If the United States objects or intervenes in this proceeding, the Parties will work together and with the United States to determine whether this matter can be resolved without further litigation.

## XI.    RETENTION OF JURISDICTION

56.    The Court shall retain jurisdiction of this case after entry of this Consent Decree for purposes of implementing and enforcing the terms and conditions of the Consent Decree and adjudicating disputes under Section VIII (Dispute Resolution) until termination of the Decree.

## XII.    MODIFICATION

57.    The terms of this Consent Decree may be modified only by a subsequent written agreement signed by both Parties.  Where the modification constitutes a material change to any term of this Consent Decree, it shall be effective only upon approval by the Court.

## XIII. GENERAL PROVISIONS

58.    This Consent Decree is not a permit.  Compliance with the terms of this Consent Decree does not guarantee compliance with all applicable federal, state, or local laws or regulations.  The provisions set forth herein do not relieve Defendants from any

obligation to comply with other state and federal requirements under the Clean Air Act at the Welsh Plant.

59.     Every term expressly defined by this Consent Decree shall have the meaning given to that term by this Consent Decree.

60.     This Consent Decree does not limit, enlarge or affect the rights of any Party to this Consent Decree as against any third parties, and does not provide any third party with any rights against any Party.

61.     This Consent Decree constitutes the final, complete and exclusive agreement and understanding between the Parties with respect to the settlement embodied in this Consent Decree, and supersedes all prior agreements and understandings between the Parties related to the subject matter herein.     No document, representation, inducement, agreement, understanding, or promise constitutes any part of this Consent Decree or the settlement it represents, nor shall they be used in construing the terms of this Consent Decree.

62.     Certain information provided by Defendants to Plaintiffs pursuant to this Consent Decree may be considered "Confidential Information."     Any information that Defendants designate as "Confidential Information" shall be maintained as confidential by the Parties consistent with the terms of the Protective Order (Dkt No. 69) entered by this Court in this matter.     For purpose of Paragraph 14 of the Protective Order, which requires the return of Confidential Information upon the "termination of the action", the Parties agree that termination of the Consent Decree shall constitute "termination of the action".

63.     Except as otherwise provided in this Paragraph, each Party to this action shall bear its own costs and attorneys' fees.  Defendants shall reimburse Plaintiffs for a portion of their attorneys' fees and costs, up to a total of $450,000, upon presentation by counsel for Plaintiffs to counsel for Defendants of billing summaries and invoices documenting costs incurred of at least this amount, within thirty (30) days of the Effective Date of this Consent Decree.

### XIV.   SIGNATORIES AND SERVICE

64.     Each undersigned representative of the Parties certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind to this document the Party he or she represents.

65.     This Consent Decree may be signed in counterparts, and such counterpart signature pages shall be given full force and effect.

### XV.    TERMINATION OF ENFORCEMENT UNDER DECREE

66.     Except as provided herein, this Consent Decree shall terminate upon the earlier of (a) Defendants' completion of all requirements of this Consent Decree or (b) December 31, 2012.  Should any requirement of this Consent Decree remain incomplete or disputed as of December 31, 2012, termination shall not occur until all remaining requirements have been completed and/or disputes concerning such requirements have been finally resolved or adjudicated.  Termination does not require approval of the Court and is automatic upon the filing of a joint notice of termination.  Any Party's failure to enter into a joint notice of termination shall be subject to Dispute Resolution as provided in Section VIII.  The following provisions survive termination of this Consent Decree: Section VI (Release and Resolution of Claims), Section XVI (Final Judgment), and Paragraph 62 (concerning Confidential Information).

## XVI.   FINAL JUDGMENT

67.     Upon approval and entry of this Consent Decree by the Court, this

Consent Decree shall constitute a final judgment in the above-captioned matter between

Plaintiffs and Defendants.

**SIGNED this 16th day of June, 2008.**

DAVID FOLSOM
UNITED STATES DISTRICT JUDGE

**For Defendants:**

Venita McCellon-Allen
President and COO
Southwestern Electric Power Company
1 Riverside Plaza, 30th Floor
Columbus, Ohio 43215
(614) 716-1000

**For Plaintiff Sierra Club:**


Dr. Ken Kramer
Director, Lone Star Chapter
Sierra Club
1202 San Antonio
Austin, Texas 78701
P.O. Box 1931
Austin, Texas 78767
ken.kramer@sierraclub.org


**For Plaintiff Public Citizen:**


Mr. Tom Smith
Public Citizen
1002 West Ave.
Austin, Texas 78701
smitty@citizen.org